UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA MARIE CAMP,

               Plaintiff,                       Case No. 2:20-cv-12837
                                             District Judge Denise Page Hood
v.                                          Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 19), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 21) and AFFIRM THE COMMISSIONER'S DECISION

**I.     RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 19), **GRANT** Defendant's motion for summary judgment

(ECF No. 21), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

Plaintiff Angela Marie Camp brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security (Commissioner)

denying her application for Supplemental Security Income (SSI).  This matter is

before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (ECF No. 19), the Commissioner's cross-motion for summary judgment (ECF No. 21), Plaintiff's reply (ECF No. 22), and the administrative record (ECF No. 15).

### A.    Background and Administrative History

#### 1.    Prior Claims

Plaintiff filed prior applications for disability insurance benefits (DIB) and SSI on September 4, 2007, and September 17, 2007, respectively.  (*See* ECF No. 15-3, PageID.155.)  "Those claims were denied initially, January 14, 2008, and after a hearing, December 9, 2010.  The Appeals Council declined to review the prior decision and [Plaintiff] did not file an additional appeal."  (ECF No. 15-3, PageID.155.)  Plaintiff again filed applications for DIB and SSI on October 12 and 14, 2016.  (ECF No. 15-3, PageID.155; *see also* ECF No. 15-2, PageID.80.)  A hearing regarding these prior claims was held on June 22, 2018, and on September 17, 2018, Administrative Law Judge (ALJ) Amy Rosenberg found that Plaintiff was not disabled within the meaning of the Social Security Act.  (ECF No. 15-3, PageID.152-171; *see also* ECF No. 15-2, PageID.80.)

#### 2.    Current claim and appeal

In her September 25, 2018 application for SSI, Plaintiff alleges her disability began that very same day, and approximately one week after ALJ Rosenberg's denial of her previous applications, at the age of 43.  (ECF No. 15-5, PageID.271-

276.)  In her disability report, she lists degenerative disc disease, osteoarthritis, fibromyalgia, chronic myofascial syndrome, depression and anxiety, chronic fatigue syndrome, insomnia, IBS, migraines, low function thyroid, carpal tunnel in both wrists, and surgery on both knees due to torn meniscus as limiting her ability to work.  (ECF No. 15-6, PageID.196.)  Her application was denied on November 7, 2018.  (ECF No. 15-3, PageID.184-185.)

Plaintiff requested a hearing by an ALJ.  (ECF No. 15-4, PageID.207-209.) On August 15, 2019, ALJ Lawrence Blatnik held a hearing at which Plaintiff and a vocational expert (VE), Heather Benton, testified.  (ECF No. 15-2, PageID.94-127.)  On November 22, 2019, ALJ Blatnik issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act since September 25, 2018.  (ECF No. 15-2, PageID.77-93.)[1]

Plaintiff submitted a request for review of the hearing decision/order.  (ECF No. 15-4, PageID.267-269.)  However, on August 27, 2020, the Appeals Council

---

[1] In so doing, the ALJ stated:

> I have considered [that] the issue of disability from December 31, 2012, through September 17, 2018, the date of the prior final decision, has been addressed and the doctrine of *res judicata* applies.  I will address the issue of disability beginning September 25, 2018, the current alleged onset date.

(ECF No. 15-2, PageID.80.)

denied Plaintiff's request for review.  (ECF No. 15-2, PageID.62-67.)  Thus, ALJ

Blatnik's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on October 22, 2020.  (ECF

No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 143 pages of medical

records, which were available to the ALJ at the time of his November 22, 2019

decision.  (ECF No. 15-7, PageID.350-524 [Exhibits C1F-C10F].)  These materials

will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. § 416.920(a)(4), at **Step 1** of the sequential evaluation

process, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since September 25, 2018, the application and alleged onset date.  (ECF No. 15-2,

PageID.83.)  At **Step 2**, the ALJ found that Plaintiff had the following severe

impairments: degenerative disc disease of the cervical and lumbar spine, status

post cervical discectomy/fusion; degenerative joint disease of the bilateral knees;

migraine headaches; hypothyroidism; obesity; depression; and anxiety disorder.

(ECF No. 15-2, PageID.83-84.)  At **Step 3**, the ALJ found Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the

4

severity of one of the listed impairments.  (ECF No. 15-2, PageID.84-85, 87.)[2]

**Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's

residual functional capacity (RFC) and determined that Plaintiff had the RFC:

> to perform sedentary work . . . .  The claimant can lift or carry ten
> pounds occasionally and less than ten pounds frequently.  She can sit
> for at least six hours, and stand and walk up to two hours; but would
> require the ability to change position every 20 to 30 minutes, for three
> to five minutes at a time.  She can occasionally climb, balance, stoop,
> kneel, crouch and crawl.  She can occasionally reach overhead with
> both arms.  She can frequently handle, finger and feel with both
> hands.  She must avoid all exposure to unprotected heights, moving
> mechanical parts and rough, uneven terrain.  She can understand,
> remember and carry out simple, routine tasks and can make simple
> work-related decisions.

(ECF No. 15-2, PageID.86-89.)  At **Step 4**, the ALJ determined that Plaintiff was

unable to perform any past relevant work.  (ECF No. 15-2, PageID.89.)  At **Step 5**,

considering Plaintiff's age, education, work experience, and RFC, the ALJ

determined that there were jobs that existed in significant numbers in the national

economy that Plaintiff could perform, such as information clerk, office clerk, and

interviewer.  (ECF No. 15-2, PageID.89-90.)  The ALJ therefore concluded that

Plaintiff had not been under a disability, as defined in the Social Security Act,

since September 25, 2018.  (ECF No. 15-2, PageID.90.)

---

[2] Pages 7 and 8 of the decision are out of sequence in the transcript.

### D.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final
administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case
under the Social Security Act, the Court "must affirm the Commissioner's decision
if it 'is supported by substantial evidence and was made pursuant to proper legal
standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)
(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see
also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as
to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under
this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of
evidence but less than a preponderance; it is such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241
(quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir.
1994)).  In deciding whether substantial evidence supports the ALJ's decision, the
Court does "not try the case de novo, resolve conflicts in evidence, or decide
questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);
*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,
to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.
The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## E.     Analysis

Plaintiff argues that the ALJ's decision is unsupported by substantial evidence and, thus, reversal or remand is required.  (ECF No. 19, PageID.532, 550; ECF No. 22, PageID.591.)  Specifically, she asserts that: (1) the ALJ erred at Step 3 by determining that she does not meet or medically equal Listing 1.04(A); (2) the ALJ erred at Step 5 because the RFC fell short of including all of her documented limitations; and (3) the ALJ failed to properly consider the medical opinions from PAC Maria Thelen.  (ECF No. 19, PageID.537-550; ECF No. 22, PageID.582-591.)  The Commissioner opposes Plaintiff's motion, arguing that substantial

7

evidence supported the ALJ's decision.  (ECF No. 21.)  For the reasons that follow, I agree with the Commissioner.

### 1.    The Court should find that the ALJ did not err at Step 3

Plaintiff challenges the ALJ's determination that her impairments did not meet or medically equal Listing 1.04A.  (ECF No. 19, PageID.539-544 (citing ECF No. 15-2, PageID.84).)  In his decision, the ALJ stated, "The claimant's impairments do not meet or equal the criteria of Listings 1.02, 1.04 or any other listing."  (ECF No. 15-2, PageID.84.)

At Step 3 of the sequential analysis, the plaintiff bears the burden of establishing that her impairments meet or medically equal a listed impairment.  *See Buress v. Sec'y of Health and Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987); *see also Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 644 (6th Cir. 2006). "When a claimant has a listed impairment but does not meet the criteria, an ALJ can find that the impairment is 'medically equivalent' to the listing if the claimant has 'other findings related to [the] impairment that are at least of equal medical significance to the required criteria.'" *Thomas v. Comm'r of Soc. Sec.*, No. 12-14758, 2014 WL 688197, at * 8 (E.D. Mich. Feb. 21, 2014) (quoting 20 C.F.R. § 416.926).

8

At the time of the ALJ's decision, Listing 1.04A required a disorder of the spine "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.[3]  "[T]he claimant must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014).  Thus, "[t]o establish the equivalent of nerve-root compression [Plaintiff] must demonstrate a lack of motor strength, a lack of sensory functions, and a positive straight-leg raising test, among other things," and "[a]s for spinal-cord compression, [Plaintiff] must show that she cannot 'ambulate effectively,' among other criteria." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011).

---

[3]  "The Commissioner revised the musculoskeletal Listings effective April 2, 2021, and the revised version applies to claims filed on or after that effective date or that are pending on that effective date." *Edward M. v. Comm'r of Soc. Sec.*, No. 2:21-cv-4073, 2022 WL 593351, at *5 n.4 (S.D. Ohio Feb. 28, 2022) (citing Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164-01, 2020 WL 7056412 (Dec. 30, 2020)).

Here, the main dispute is essentially over whether Plaintiff demonstrated medical equivalence with regard to the third element of nerve root compression— "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. In her summary judgment motion, Plaintiff asserts:

> As for the last element of Listing 1.04A "*motor loss (atrophy associated with muscle weakness) accompanied by sensory or reflex loss*", this element is, arguably, not quite met, but rather, it is medically equaled. There is evidence of *muscle weakness* shown by treater Maria Thelen's two medical opinions which indicate Plaintiff is only able to lift and carry less than 10 pounds occasionally and use her hands and fingers between 0% and 5% of a workday. (ECF No. 15-7, PageID.375-376, 475-476). The Plaintiff told her doctors that she avoids lifting whenever possible (ECF No. 15-7, PageID.364). During her hearing, she testified to only being able to lift or carry "less than 5 pounds" for short distances and has problems using her hands and fingers to grasp and pick up things. (ECF No. 15-2, PageID.106).

(ECF No. 19, PageID.543.)

As the Commissioner points out, however, the ALJ cited to Plaintiff's relevant examination records from January 2019 and May 2019 in which the examiners noted full strength in Plaintiff's upper extremities, normal muscle tone and bulk, sensory grossly intact to light touch in all extremities, a non-spastic gait, full hand grasp strength, and limited cervical and lumbar rotation, but normal strength in her shoulders, elbows, wrists, hands, fingers, and feet. (ECF No. 15-2,

PageID.84, 88 (citing ECF No. 15-7, PageID.386, 398).)  And a review of those records confirms the ALJ's summary.

Further, as will be discussed more fully below, the ALJ properly found PAC Thelen's opinion unpersuasive.  (*See* ECF No. 15-2, PageID.88.)  And although Thelen opined that Plaintiff could only lift and carry 10 pounds occasionally and use her hands and fingers between 0% and 5% of a workday (ECF No. 15-7, PageID.376, 476), she did not opine that Plaintiff met or medically equaled Listing 1.04A, nor does Plaintiff direct the Court's attention to an alternative medical opinion stating that she meets or equals Listing 1.04A.

Finally, Plaintiff's contention that the ALJ's analysis is insufficient, citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011) (ECF No. 19, PageID.539-540), fails.  The *Reynolds* court suggested that an insufficient listing or equivalency analysis "was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary."  *Id*. at 415.  There, the court found that this required remand without additional analysis of whether the claimant's impairments actually met or equaled a listing. *Id*.

However, the unpublished decision in *Reynolds* and its progeny has been undermined by other, more recent Sixth Circuit decisions (which are also

11

unpublished).  These have declined "to require remand when the ALJ provides
minimal reasoning at step three of the five-step inquiry" if the ALJ "made
sufficient factual findings elsewhere in his decision to support his conclusion at
step three."  *See, e.g., Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66
(6th Cir. 2014) (finding that any error in the ALJ's Step 3 findings "is harmless,
because Forrest has not shown that his impairments met or medically equaled in
severity any listed impairment[s]"); *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x
470, 472 (6th Cir. 2012) (finding that ALJ's determination was supported by
evidence in the record, and thus it was unnecessary for the ALJ to make specific
findings regarding a particular listed impairment).  Rather, the more recent case
law indicates that any error with respect to the ALJ's Step 3 analysis is harmless
unless the claimant can establish that she satisfied the listing in question.  *Forrest*,
591 F. App'x at 366 (distinguishing *Reynolds* and holding any error harmless
"because Forrest has not shown that his impairments met or medically equaled in
severity any listed impairment").  Moreover, SSR 17-2p provides, "Generally, a
statement that the individual's impairment(s) does not medically equal a listed
impairment constitutes sufficient articulation for this finding."  2017 WL 3928306,
at *4 (Mar. 27, 2017).  And an ALJ's explanation as to why a claimant did not
meet or medically equal a listing need not be confined to the section of the decision
explicitly addressing Step 3.  *Staggs v. Astrue*, No. 2:09-cv-00097, 2011 WL

3444014, at *3 (M.D. Tenn. Aug. 8, 2011) ("Nor is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three; the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis." (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)).

Here, as provided above, a review of the ALJ's opinion, in its entirety, shows that the ALJ carefully considered the evidence regarding Plaintiff's impairments in determining that Plaintiff did not meet or medically equal Listing 1.04A.

### 2. The Court should find that the ALJ properly evaluated PAC Thelen's opinions

Plaintiff argues that the ALJ improperly disregarded PAC Maria Thelen's January and June 2019 opinions. (ECF No. 19, PageID.548-549; ECF No. 22, PageID.588-589.) For the reasons that follow, I disagree.[4]

### a. Standard

As Plaintiff filed her application after March 17, 2017, the ALJ reviewed the subject medical opinions according to the standards provided in 20 C.F.R. §

---

[4] The Undersigned is addressing this argument out of turn because doing so allows for better organization of the analysis and recommendations contained herein.

416.920c,[5] which states, "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 416.920c(a).  Instead, an ALJ must evaluate the persuasiveness of the medical opinions submitted and articulate the findings using the following factors: supportability, consistency, relationship with the claimant, and specialization, with supportability and consistency being the most important.  20 C.F.R. § 416.920c.

### b.    PAC Thelen's opinions

### i.    January 2019

On January 14, 2019, PAC Thelen completed a medical source statement (MSS) in which she indicated personal treatment of Plaintiff since 2009, and opined that Plaintiff would need to shift positions and take unscheduled breaks during an 8-hour workday; requires leg elevation with prolonged sitting; can only carry less than ten pounds occasionally; can never look down and can only occasionally turn her head right and left, look up, and hold her head in a static position; can use her hands and fingers to twist and grasp for less than 5% of a workday and can reach overhead for 0% of a workday; and would likely be absent

---

[5] Plaintiff cites to 20 C.F.R. § 404.1520(c), the regulation governing review of medical opinions for applications filed prior to March 17, 2017, but acknowledges that the current standard requires the evaluation of medical opinions for persuasiveness.  (ECF No. 19, PageID.549.)

from work more than four days per month.  (ECF No. 15-7, PageID.373-376.)  To the MSS, she attached notes from Plaintiff's office visit that same day.  (ECF No. 15-7, PageID.377-381.)

### ii.    June 2019

In June 2019, PAC Thelen completed a second MSS, in which she indicated treatment of Plaintiff since 2007, and opined that Plaintiff would need a job which allows for shifting positions and unscheduled breaks; must elevate her legs with prolonged sitting; could only occasionally carry less than ten pounds; could never look down, turn her head right or left, look up, or hold her head in a static position; could use her hands to grasp, turn, and twist objects, and use her arms to reach overhead, 0% of a workday; could use her fingers for fine manipulation less than 5% of a workday, and would likely be absent more than four days per month. (ECF No. 15-7, PageID.473-476.)

### c.    ALJ Blatnik found PAC Thelen's opinions unpersuasive

ALJ Blatnik briefly addressed PAC Thelen's opinions, stating:

> I am not persuaded by the assessments of Maria Thelen, PAC (Exhibits C3F, C8F) since the restrictions she found appear overstated, and are not well supported by the relevant treatment records or the other record evidence.

(ECF No. 15-2, PageID.88.)

15

### d. Analysis

For the reasons that follow, the Court should find no error in the ALJ's

analysis of PAC Thelen's opinions.

Although ALJ Blatnik's evaluation of PAC Thelen's opinions lacks specific

elaboration, it directly addresses the two most important factors of supportability

and consistency, 20 C.F.R. § 416.920c, and substantial evidence, which he

discusses throughout his decision, supports his conclusion. Indeed, as the

Commissioner asserts (ECF No. 21, PageID.576), contrary to the very restrictive

limitations listed in the January 2019 MSS, the examination records *from the same*

*day* attached to that MSS note only mild tenderness of the cervical spine with

decreased range of motion, and 4/5 muscle strength with a normal gait. (ECF No.

15-7, PageID.377-381.) PAC Thelen's opinion fails to connect these examination

findings with the extreme limitations she listed. And, as summarized by the ALJ,

other examinations in the record also showed less extreme findings:

> [I]n November 2018, [Plaintiff's] primary care clinician reported that
> the claimant had normal chest, lung, and cardiovascular examinations.
> She indicated that the claimant had normal gait and station. In
> December 2018, the claimant described her migraine headaches as
> mild. She indicated that her prescribed medications were controlling
> her muscle pain and migraine headaches well (Exhibit C7F). In
> January 2019, Dr. Dashnaw noted that the claimant had full strength
> in both upper extremities, including deltoid, biceps, triceps, wrist
> extension and hand grasp. He indicated that the claimant's muscle
> bulk and tone were normal and sensory was grossly intact to light
> touch in all extremities. Dr. Dashnaw reported that the claimant was
> able to rise from a seated position, walked with a non-spastic gait, and

had intact toe and heel walk (Exhibit C4F).  On May 23, 2019, a
clinician reported that the claimant's back examination revealed no
deformity or pain, extremities examination demonstrated no edema or
cyanosis and normal pulses, and neurologic examination revealed no
focal neuro deficit (Exhibit C9F).

(ECF No. 15-2, PageID.88.)  Plaintiff does not dispute the accuracy of the ALJ's

summary of these records.  Further, the ALJ cited to Plaintiff's activities of daily

living including meal preparation, light housework, doing laundry, and grocery

shopping (ECF No. 15-2, PageID.86, 88), which is also an appropriate

consideration.  S*ee, e.g., Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 441-42

(6th Cir. 2017) ("It was entirely appropriate for the ALJ to consider whether

Shepard's asserted limitations were consistent with her ability to drive, prepare

simple meals, shop, and go to eat or the movies.").

Plaintiff points to her history of surgical spine surgeries and diagnostic test

results to demonstrate consistency between the record evidence and PAC Thelen's

opinions (ECF No. 19, PageID.549 (citing ECF No. 15-7, PageID.384, 458-460,

463)), but the ALJ explicitly addressed this portion of Plaintiff's medical history

(ECF No. 15-2, PageID.83-84), and it does not negate the medical examination

findings relied upon by the ALJ and discussed above.  Nor does the evidence of

Plaintiff's subjective complaints to treatment providers.  *See Cohen v. Sec'y of*

*Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992) (ALJ not required to

blindly accept subjective statements).

Plaintiff also cites to examination records she believes support the limitations proffered by PAC Thelen.  (ECF No. 19, PageID.549 and ECF No. 22, PageID.588-589 (citing ECF No. 15-7, PageID.361, 364, 366, 379, 398).)  These examinations showed spasms, positive Shoulder Abduction tests, tenderness, and decreased range of motion.  But the ALJ considered these records, and supportably came to a different conclusion than Plaintiff advocates for regarding PAC Thelen's opinions.  *See Reynolds*, 424 F. App'x at 414 (it is not within the province of the Court to "reconsider facts, re-weight the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ").

Finally, Plaintiff implies that the ALJ should have found PAC Thelen's opinions persuasive because she treated Plaintiff for a number of years.  (ECF No. 19, PageID.549; ECF No. 22, PageID.588-589.)  However, under the current regulations, summarized above, an ALJ need not afford specific weight to the opinion of a treating source.  20 C.F.R. § 404.1520c(a).  Supportability and consistency, *not* treatment or examining relationship, are the most important factors.  20 C.F.R. § 404.1520c(b)(2); *see also Hardy v. Comm'r of Soc. Sec.*, 554 F.Supp.3d 900, 905-06 (E.D. Mich. 2021).  Accordingly, the Court should find no error in the ALJ's analysis of PAC Thelen's opinions.

### 3.    The Court should reject Plaintiff's argument that the ALJ failed to create an accurate RFC

Plaintiff argues that the RFC assessment falls short of including the entirety of her limitations.  (ECF No. 19, PageID.544-548; ECF No. 22, PageID.584-590.) Specifically, she asserts that her RFC should have included limitations regarding flexion, extension, rotation, and static hold of her neck; the need to take breaks throughout the day which would put her off task; and greater manipulative limitations on the use of her hands and fingers.  (*Id.*)  Although purportedly posited as a challenge to the ALJ's Step 5 determination – which is all-too-often attempted and would conveniently shift the burden to the Commissioner – this is clearly just a challenge to the RFC, labels notwithstanding.  "To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner."  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).  *See also Kirchner v. Colvin*, No. 12-cv-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013 ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").  For the reasons that follow, I find Plaintiff's RFC challenge without merit.

### a.   RFC determination

The Plaintiff bears the burden of proof at Steps 1-4, including proving her

RFC.   *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)

("[D]uring the first four steps, the claimant has the burden of proof; this burden

shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health*

*and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)); *see also Jordan v. Comm'r*

*of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains

the burden of proving her lack of residual functional capacity.").   The

Commissioner has the burden of proof only on "the fifth step, proving that there is

work available in the economy that the claimant can perform[.]"   *Her*, 203 F.3d at

391-92.

Plaintiff's RFC is "the most [she] can still do despite the physical and mental

limitations resulting from her impairments."   *Poe v. Comm'r of Soc. Sec.*, 342 F.

App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a).   The

determination of Plaintiff's RFC is an issue reserved to the Commissioner and

must be supported by substantial evidence.   20 C.F.R. § 404.1527(d)(2).   Pursuant

to Social Security Ruling (SSR) 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each
> conclusion, citing specific medical facts (e.g., laboratory findings) and
> nonmedical evidence (e.g., daily activities, observations).   In
> assessing RFC, the adjudicator must discuss the individual's ability to
> perform sustained work activities in an ordinary work setting on a
> regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or

an equivalent work schedule), and describe the maximum amount of
each work-related activity the individual can perform based on the
evidence available in the case record.  The adjudicator must also
explain how any material inconsistencies or ambiguities in the
evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7.  "The ALJ need not decide or discuss

uncontested issues, 'the ALJ need only articulate how the evidence in the record

supports the RFC determination, discuss the claimant's ability to perform sustained

work-related activities, and explain the resolution of any inconsistencies in the

record.'"  *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002)

(citation omitted).

### b.    Neck and manipulative limitations

The ALJ's RFC assessment included no restrictions on Plaintiff's ability to

move her neck.  (ECF No. 15-2, PageID.87.)  With regard to manipulative

limitations, Plaintiff's RFC allows her to lift and carry ten pounds occasionally and

less than ten pounds frequently, and to "frequently handle, finger and feel with

both hands."  (ECF No. 15-2, PageID.87.)

Plaintiff asserts that the record supports the inclusion of greater limitations

in both areas.  In so doing, she cites to medical records documenting her cervical

spine surgeries in 2006 and 2010, complaints to treatment providers of pain when

looking side to side and up and down, and her testimony that she experiences

muscle spasms in her neck and shoulders.  (ECF No. 19, PageID.545-546 (citing

ECF No. 15-2, PageID.106, 114-115; ECF No. 15-7, PageID.364, 377, 384, 395).)

However, as stated above, an ALJ is not required to blindly accept a plaintiff's

subjective statements regarding her pain and symptoms, *see Cohen*, 964 F.2d at

529, and the ALJ acknowledged this subjective evidence as part of his RFC

assessment in accordance with the standards laid out above (ECF No. 15-2,

PageID.83-84, 86-89), but concluded:

> After careful consideration of the evidence, I find that the claimant's
> medically determinable impairments could reasonably be expected to
> cause the alleged symptoms. However, the claimant's statements
> concerning the intensity, persistence and limiting effects of these
> symptoms are not entirely consistent with the medical evidence and
> other evidence in the record . . . .

(ECF No. 15-2, PageID.86.)

Substantial evidence supports the ALJ's conclusion. As he noted,

examinations during the relevant time period showed full strength in Plaintiff's

upper extremities, normal muscle tone and bulk, sensory grossly intact to light

touch in all extremities, a non-spastic gait, full hand grip strength, and limited

cervical and lumbar rotation, but normal strength in her shoulders, elbows, wrists,

hands, and feet. (ECF No. 15-2, PageID.84, 88 (citing ECF No. 15-7, PageID.386,

398).) While Plaintiff points to examination records showing muscle spasms,

forward head posture, positive Distraction and Shoulder Abduction tests,

tenderness, decreased range of motion, and AC joint hypermobility (ECF No. 19,

PageID.546-547 (citing ECF No. 15-7, PageID.361, 364, 366, 398, 546-547)),

many are from June 2018, prior to her application and alleged onset date, and the

ALJ reviewed those from January and May 2019, but found, in support of the RFC

imposed:

> In January 2019, Dr. Dashnaw noted that the claimant had full
> strength in both upper extremities, including deltoid, biceps, triceps,
> wrist extension and hand grasp.  He indicated that the claimant's
> muscle bulk and tone were normal and sensory was grossly intact to
> light touch in all extremities.  Dr. Dashnaw reported that the claimant
> was able to rise from a seated position, walked with a non-spastic gait,
> and had intact toe and heel walk (Exhibit C4F).  On May 23, 2019, a
> clinician reported that the claimant's back examination revealed no
> deformity or pain, extremities examination demonstrated no edema or
> cyanosis and normal pulses, and neurologic examination revealed no
> focal neuro deficit (Exhibit C9F).

(ECF No. 15-2, PageID.88.)  A review of the record supports the ALJ's

summaries, and simply pointing to contrary evidence is insufficient to support the

conclusion that the RFC is unsupported by substantial evidence.  *See Blakley*, 581

F.3d at 406.  Nor is it sufficient, as Plaintiff does, to list the results of diagnostic

tests (ECF No. 19, PageID.546-547), as the ALJ accurately summarized and

considered these test results in his decision (ECF No. 15-2, PageID.83.)  Plaintiff

bears the burden of proving entitlement to a more restrictive RFC, *Jordan*, 548

F.3d at 423; *Walters*, 127 F.3d at 529, and diagnoses alone say nothing of the

severity of a claimant's symptoms or any resulting functional limitations, *see Hill*

*v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is

determined by the functional limitations imposed by a condition, not the mere

23

diagnosis of it.") (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)).

Further, Plaintiff's statement that with her "severe numbness and tingling in her

hands and fingers, plus plain [sic] symptoms that worsens when handling/fingering

smaller objects, there is no possible way she would be able to handle, finger and

feel for that amount of time each day" (ECF No. 19, PageID.548), is purely

speculative and argumentative.

Plaintiff also cites to PAC Thelen's opinions in support of her argument for

a more restrictive RFC, but as described above, the ALJ appropriately and

supportably found these opinions unpersuasive.  It bears noting, as well, that

although Plaintiff challenges the ALJ's assessment of those opinions, which opine

a near-total inability to move her neck, Plaintiff herself admits in her reply brief

that she does not necessarily assert the totally inability to move her neck and

hands, stating, "There is a middle ground here that can demand further restrictions

to [her] RFC without the need for complete disability."  (ECF No. 22,

PageID.586.)

In further support of the RFC imposed, the ALJ examined the assessment by

David Kroning, M.D., stating: "I am persuaded by the assessment of Disability

Determination Services (DDS) physician David Kroni[n]g, M.D. (Exhibit C2A/7-

10) finding restrictions that are consistent with and supported by, the medical

record, and have been included in the residual functional capacity adopted.  Based

on my review of the record evidence and the hearing testimony, I have added a provision for frequent position changes." (ECF No. 15-2, PageID.88.) Plaintiff only challenges the ALJ's assessment of, and reliance upon, this opinion for the first time in her reply brief. (ECF No. 22, PageID.584-586.) Thus, she has waived this argument. *See Grand Traverse Band of Ottawa and Chippewa Indians v. Blue Cross & Blue Shield of Mich.*, 391 F.Supp.3d 706, 715 n.5 (E.D. Mich. 2019) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)) ("Arguments raised for the first time in a reply brief are considered waived."). The same is true of her reply brief arguments challenging the ALJ's evaluation of her symptoms under SSR 16-3p. (ECF No. 22, PageID.590.)

### c.   Off task limitations

Finally, Plaintiff argues that the ALJ "failed to include any limitations in regard to [her] need to take breaks throughout the day to lay down and ice her neck throughout the day." (ECF No. 19, PageID.548.) But the evidence she relies upon for support—her own reports of less neck pain with rest and ice, as well as PAC Thelen's opinions (ECF No. 19, PageID.548 (citing ECF No. 15-7, PageID.364, 366, 374-375, 474-475))—is insufficient for the Court to find error here, for all of the same reasons described above. Accordingly, the Court should reject Plaintiff's argument that the ALJ failed to create an accurate RFC.

**F.     Conclusion**

Plaintiff has the burden of proof on statements of error.  Plaintiff has not shown legal error that would upend the ALJ's decision, and the ALJ's decision is supported by substantial evidence.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 19), **GRANT** Defendant's motion for summary judgment (ECF No. 21), and **AFFIRM** the Commissioner of Social Security's decision.

**III.    PROCEDURE ON OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 24, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE